Parker, J.
delivered the opinion of the Court.
After stating the case, he proceeded:
The 13th section of the Act referred to, provides, that “if any master, mistress or overseer of a family, merchant, tavern-keeper or any other person, shall knowingly permit or suffer any slave, not belonging to him or her, to be and remain upon his or her plantation, lot or tenement, above four hours at any one time, without leave of the owner or overseer of such slave, he or she, so permitting, shall forfeit and pay throe dollars, for every such offence; and every owner or overseer of a plantation, merchant, tavern-keeper, or any other person, who shall so permit or suffer, more than five negroes or slaves, other than his or her own, to be and remain upon his or her plantation or quarter, lot or tenement, at any one time, shall forfeit and pay one dollar, for each negro or slave above that number.” The questions arise out of the latter clause of this section.
As to tin; first question, the Court is of opinion, that it is not necessary for the Commonwealth to prove that the negroes and slaves over the number of five, referred to in that clause, remained above four hours at any one time, on the Defendant’s lot or tenement.
If they remained for any period of time however short, it satisfies the words of the Act. .The expression “ so permit,” obviously refers_ to the knowledge of the Defendant, mentioned in the preceding clause, and not to Die time of the negroes or slaves, remaining. It is the same as if the Legislature had .said. “ And any person who *671 shall so knowingly permit,” &c. The expressions “to be, and remain,” were intended to obviate the construction, (if the woi’ds “ to be,” alone had been used,) that the mere passing or over a lot, or with the knowledge of the owner, of more than five negroes or slaves, without abiding for any purpose whatever, was a violation of the Law.
If the expressions “to be and remain," br iCso permiif render it necessary to conviction, that the negroes or slaves, referred to ia the last clause of this section, should like those referred to in the first, remain above four hours at any one time, then this absurdity would follow, that if six slaves remained' above four hours on a person’s lot, tenement or plantation, with -his knowledge, and he* was prosecuted under the last clause of the section, he could only be fined one dollar, whereas if but one so remained, and be was prosecuted under the first, the fine would be three dollars. In fact, by .such a construction, the same meaning is attributed to both clauses of the section, and the only difference would be in the amount of the line, involving the above absurdity. .
In looking to the spirit of the Act, the .Court,is confirmed in the' construction which its words warrant. The first part of the clause is principally intended to protect private rights, fay' preventing persons from knowingly suffering the slaves of others to tarry on their premises, without leave of the owners, although the offence might mot amount to an actual secret harbouring. The last part of it was intended to guard the public against assemblages of negroes, ahd slaves, equally dangerous to the peace of the community, and destructive of the morals of the persons Concerned. In the first case, a remaining for less than four hours, .might be considered a slight interference with the owner’s rights: in the other, a much shorter period than four hoürs, would be sufficient to effect every purpose the Law intended to guard against, whether of tippling, committing breaches of the peace, plotting together for illegal purposes, or any other.
As to the second question arising out of the verdict, the Court is clearly of opinion,that as the Information eharges the Defendant with permitting an assemblage of negro slaves, the proof ought to have corresponded with the allegation, and therefore, that it was incumbent on the Commonwealth to prove that the negroes assembled were slaves. Whether such proof would have been necessary, if the Information had pursued the words of the Act of Assembly, this Court does not mean now to dehide".
The consequence is, that in answer to th'e third question, this Court certifies its opinion to the Superior Court of Norfolk *673 that upon the whole case, Judgment ought to be rendered for the Defendant.